UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
X█████ M███████, an Infant, by his Mother and
Natural Guardian, JUDITH DALEY, and JUDITH
DALEY, Individually,

                       Plaintiffs,

       - against -

UNITED STATES OF AMERICA and
MONTEFIORE NEW ROCHELLE HOSPITAL,

                       Defendants.
-----------------------------------------------------------X

Judge

**VERIFIED COMPLAINT**

Plaintiffs, X█████ M███████, an Infant, by his Mother and Natural Guardian,

JUDITH DALEY, and JUDITH DALEY, Individually, allege:

1. This action arises under Title 28, United States Code, Sections 1346(b) and 2671-

2680 and 42 USC §233.

2. Plaintiffs reside at 22 Short Street, Mount Vernon, County of Westchester, State of

New York.

3. Mount Vernon Neighborhood Health Center, Inc. is located at 107 West 4th Street,

Mount Vernon, County of Westchester, State of New York, which is located in the Southern

District of New York of the United States District Court.

4. From April 13, 2016 through September 7, 2016, and prior and subsequent thereto,

Mount Vernon Neighborhood Health Center, Inc. was owned and operated by defendant

UNITED STATES OF AMERICA.

5. Defendant, UNITED STATES OF AMERICA, its agents, servants and/or employees,

operated, maintained, managed, controlled, and supervised the aforesaid Mount Vernon

Neighborhood Health Center, Inc. which held itself out to the public at large and, more

1

particularly, to the plaintiffs herein as a health care center duly qualified and capable of rendering adequate medical care and treatment to the public at large and for such purposes hired physicians, midwives, radiologists, surgeons, nurses, attendants and other personnel.

7. Edward Amelemah, M.D. is a physician duly licensed to practice medicine in the State of New York.

8. Edward Amelemah, M.D. held himself out as a physician duly licensed to practice medicine in the State of New York.

9. Edward Amelemah, M.D. held himself out as a physician specializing in the field of obstetrics and gynecology.

10. Edward Amelemah, M.D. maintains an office at Mount Vernon Neighborhood Health Center, Inc. located at 107 W. 4th Street, Mount Vernon, County of Westchester, State of New York, and is employed by the United States of America.

11. Edward Amelemah, M.D. held himself out to the public at large and more particularly to the plaintiffs as duly qualified to render requisite medical care and treatment to the public at large, and more particularly, to the plaintiffs herein.

11. Loricelli Quintos, M.D. is a physician duly licensed to practice medicine in the State of New York.

12. Loricelli Quintos, M.D. held herself out as a physician duly licensed to practice medicine in the State of New York.

13 Loricelli Quintos, M.D. held herself out as a physician specializing in the field of obstetrics and gynecology.

14. Loricelli Quintos, M.D. maintains an office at Mount Vernon Neighborhood Health Center, Inc. located at 107 W. 4th Street, Mount Vernon, County of Westchester, State of New York, and is employed by the United States of America.

15. Loricelli Quintos, M.D. held herself out to the public at large and more particularly to the plaintiffs as duly qualified to render requisite medical care and treatment to the public at large, and more particularly, to the plaintiffs herein.

16. Defendant MONTEFIORE NEW ROCHELLE HOSPITAL (hereinafter referred to as "HOSPITAL") is a domestic corporation duly authorized to do business in the State of New York.

17. Defendant HOSPITAL maintains a hospital premises located at 16 Guion Place, New Rochelle, County of Westchester, State of New York.

18. Defendant HOSPITAL, its agents, servants and/or employees operated, maintained, managed, controlled and supervised the aforesaid medical center which held itself out to the public at large and, more particularly, to the plaintiffs herein, as facilities duly qualified and capable of rendering adequate medical care and treatment to the public at large and for such purposes hired physicians, physician's assistants, midwifes, radiologists, nurses, nurse practitioners, attendants and other personnel.

19. At all times hereinafter mentioned, the defendant HOSPITAL was accredited by the Joint Commission on Hospital Accreditation and agreed to follow their by-laws, guidelines and policies.

20. Commencing on or about the 13th day of April, 2016 through on or about the 7th day of September, 2016, and prior and subsequent thereto, plaintiff JUDITH DALEY came under the medical care and treatment of Mount Vernon Neighborhood Health Center, Inc., which is

3

operated by agents, servants and/or employees of defendant, UNITED STATES OF
AMERICA.

21. Commencing on or about the 13th day of April, 2016 through on or about the 7th day
of September, 2016, and prior and subsequent thereto, plaintiff X████ M███████, while in
utero and after delivery, came under the medical care and treatment of Mount Vernon
Neighborhood Health Center, Inc., which is operated by agents, servants and/or employees of
defendant, UNITED STATES OF AMERICA.

22. It was the duty of the defendant, UNITED STATES OF AMERICA, to reasonably
care for, treat and supervise its patients, and more particularly, the plaintiffs herein who sought
treatment at its Mount Vernon Neighborhood Health Center, Inc.

23. Defendant, UNITED STATES OF AMERICA, by and through its agents, servants
and/or employees rendered medical care and treatment to plaintiff JUDITH DALEY from on or
about the 13th day of April, 2016 through on or about the 7th day of September, 2016, and prior
and subsequent thereto.

24. Defendant, UNITED STATES OF AMERICA, by and through its agents, servants
and/or employees rendered medical care and treatment to plaintiff X██████. M██████
while in utero and after delivery, from on or about the 13th day of April, 2016 through on or
about the 7th day of September, 2016, and prior and subsequent thereto.

25. Commencing on or about the 6th day of September, 2016 through on or about the 7th
day of September, 2016, and prior and subsequent thereto, plaintiff JUDITH DALEY came
under the medical care and treatment of Edward Amelemah, M.D.

26. Commencing on or about the 6th day of September, 2016 through on or about the 7th
day of September, 2016, and prior and subsequent thereto, plaintiff X.█████ M██████,

while in utero and after delivery, came under the medical care and treatment of Edward Amelemah, M.D.

27. It was the duty of Edward Amelemah, M.D. to reasonably care for, treat and supervise his patients, and more particularly, the plaintiffs herein.

28. Commencing on or about the 13th day of April, 2016 through on or about the 7th day of September, 2016, and prior and subsequent thereto, plaintiff JUDITH DALEY came under the medical care and treatment of Loricelli Quintos, M.D.

29. Commencing on or about the 13th day of April, 2016 through on or about the 7th day of September, 2016, and prior and subsequent thereto, plaintiff X█████ M███████, while in utero and after delivery, came under the medical care and treatment of Loricelli Quintos, M.D.

30. It was the duty of Loricelli Quintos, M.D. to reasonably care for, treat and supervise her patients, and more particularly, the plaintiffs herein.

31. Mount Vernon Neighborhood Health Center, Inc. was owned and/or operated by the defendant, UNITED STATES OF AMERICA, and the health care center employees were acting in an official capacity on behalf of the defendant, UNITED STATES OF AMERICA, in the care and treatment of patients at its medical facility, and more particularly, the plaintiffs herein.

32. From on or about the 6th day of September, 2016 through on or about the 7th day of September, 2016, plaintiff JUDITH DALEY came under the medical care and treatment of defendant HOSPITAL, its agents, servants and/or employees.

33. From on or about the 6th day of September, 2016 through on or about the 7th day of September, 2016, plaintiff X.█████ M███████, while in utero, came under the medical care and treatment of defendant HOSPITAL, its agents, servants and/or employees.

34. It was the duty of defendant HOSPITAL to reasonably care for, treat, and supervise its patients, and more particularly, the plaintiffs herein.

35. On March 2, 2017, plaintiffs filed a Complaint bearing Index No. 52817/2017 in Supreme Court, Westchester County against Edward Amelemah, M.D, Loricelli Quintos, M.D., Mount Vernon Neighborhood Health Center, Inc. and Montefiore New Rochelle Hospital.

36. By Stipulation dated September 26, 2017, plaintiffs discontinued the Supreme Court action as against defendants Edward Amelemah, M.D, Loricelli Quintos, M.D., and Mount Vernon Neighborhood Health Center, Inc. without prejudice.

37. On September 27, 2017, plaintiffs presented their claims in writing to the defendant, UNITED STATES OF AMERICA, for damages in the amount of $5,000,000.00 for plaintiffs JUDITH DALEY and X█████ M█████.

38. By correspondence dated March 15, 2018, defendant UNITED STATES OF AMERICA advised plaintiffs that said claims were denied.

39, By Stipulation dated October 6, 2017, plaintiffs discontinued the Supreme Court action as against defendant MONTEFIORE NEW ROCHELLE HOSPITAL without prejudice to recommence by March 7, 2019.

## FIRST COUNT

40. The aforesaid occurrence was caused by the carelessness and negligence of the defendants in their care and treatment of the plaintiffs; failing to properly consider the infant plaintiff's condition and position in utero; in failing to perform a timely caesarian section delivery; in failing to perform a timely caesarian section delivery in light of signs and symptoms of fetal distress and fetal macrosomia; in failing to assess the infant plaintiff's position in utero prior to vaginally delivering the infant plaintiff; in failing to assess the infant's

6

plaintiff's size prior to vaginally delivering the infant plaintiff; in failing to perform proper maneuvers to determine the infant plaintiff's position; in failing to perform proper and timely sonograms prior to delivery; in performing a vaginal delivery with excessive traction and/or excessive lateral traction and/or force; in failing to anticipate shoulder dystocia at delivery; in improperly instructing the mother JUDITH DALEY to push and bear down after delivery of the infant's head and in the presence of shoulder dystocia; in improperly applying excessive traction to the infant's head and neck after delivery of the infant's head and in presence of shoulder dystocia; in failing to promptly and properly perform necessary maneuvers to effectuate a non-traumatic delivery, including the Woods and/or McRobert's maneuver; in failing to deliver the infant plaintiff's anterior shoulder in a proper manner and without trying to do so by pulling and/or tugging on the infant's head and/or neck; in improperly tugging and/or pulling on the infant plaintiff's head and/or neck; in improperly stretching and/or tearing the infant plaintiff's cervical nerve roots during delivery; in improperly causing stretching and injury to the brachial plexus; in improperly applying fundal pressure; in improperly utilizing suprapubic pressure; in using pitocin to augment labor when same was not indicated and/or contraindicated; in improperly administering pitocin; in administering pitocin when the infant plaintiff's head was not engaged; in failing to accurately assess fetal weight prior to delivery; in ignoring the infant plaintiff's mother's previous medical history; in failing to timely effectuate delivery of the infant plaintiff; in failing to diagnose and/or recognize cephalopelvic disproportion; in failing to account for same; in failing to take a complete medical history and account for same; in failing to consult proper specialists; in failing to properly conduct labor in this patient; in failing to perform an adequate episiotomy; in improperly delivering the infant plaintiff; in improperly managing plaintiff's prenatal course; in failing to treat plaintiff as a

7

high risk pregnancy; in failing to perform adequate tests and studies; in failing to perform adequate tests and studies in a timely manner; in failing to properly read and interpret the results of those tests which were taken; in failing to consult proper specialists; in failing to establish proper and adequate safeguards, steps and precautions in order to prevent the occurrence complained of; in failing to adequately attend to the infant plaintiff herein; in failing to properly screen, train and hire personnel; in failing to provide competent personnel; in failing to undertake the proper precautions so as to avoid further medical complications; in failing to properly observe and monitor the plaintiffs prior to labor and delivery; in violating all applicable statutes, rules, regulations and ordinances; in causing the injuries complained of herein; in failing to timely and/or properly carry out the  orders and/or instructions of the attending physicians; in improperly retaining unqualified and unskilled physicians and personnel; in failing to review and evaluate staff and physicians at indicated intervals; in failing to adequately supervise their staff and physicians; and in failing to obtain an informed consent; failing to exercise the degree of skill and care to which this patient was entitled; and these defendants were otherwise careless and negligent.

41. As a result of the carelessness and negligence of the defendants, plaintiff X▮▮▮ M▮▮▮ was caused to sustain severe and permanent personal injuries, including, among other things, right Erbs palsy, brachial plexus injury; decreased range of motion and strength of the right upper extremity; decreased muscle tone at birth; permanent muscle and nerve injury; cosmetic deformity; was caused to be rendered sick, sore, lame and disabled; was caused to seek extensive subsequent medical care and treatment and therapy and may, in the future, be so caused; was caused to sustain emotional pain, anguish and distress; will be caused to be incapacitated from attending to her usual duties and occupation; was caused to incur significant

8

expenses for medical care and other damages, all of which are permanent in nature and continuing into the future.

42 Under the circumstances, the entity or person responsible for the care and treatment of the plaintiffs, if a private entity or person, would be liable for the damage resulting from its careless and negligent treatment.

## SECOND COUNT

43. Plaintiffs repeat, reiterated, and realleged each and every allegation contained in the paragraphs of this Complaint numbered "1" through "41", inclusive, with the same force and effect as if more fully set forth at length herein.

44. Defendants failed to obtain plaintiff JUDITH DALEY's informed consent to the treatment, or lack of treatment, rendered to her.

45. Proper medical practice required defendants to obtain plaintiff JUDITH DALEY's consent to the treatment, or lack of treatment, rendered to her.

46. A reasonably prudent person in plaintiff JUDITH DALEY's position would not have undergone the treatment, or lack of treatment, provided by defendants had she been properly informed of the risks and hazards of such treatment, or lack of treatment.

47. Plaintiff JUDITH DALEY would not have agreed to the treatment, or lack of treatment, provided by defendants, had she been properly informed of the risks and hazards of such treatment, or lack of treatment.

48. Defendants' failure to obtain plaintiff JUDITH DALEY's informed consent is a contributing cause of the injuries sustained by plaintiff X. ████ M████, as set forth above.

9

49. The aforesaid occurrence and injuries resulting therefrom were caused solely by the carelessness and negligence of the defendants.

## THIRD COUNT

50. Plaintiffs repeat, reiterated, and reallege each and every allegation contained in the paragraphs of this Complaint numbered "1" through "42", and "43" through "49", inclusive, with the same force and effect as if more fully set forth at length herein.

51. As a result of the carelessness and negligence of these defendants, plaintiff JUDITH DALEY was caused to expend monies and incur expenses for the care and treatment of her son, infant plaintiff X█████ M█████, and may, in the future, be so caused.

52. As a result of the carelessness and negligence of these defendants, infant plaintiff X█████ M█████ was caused to be incapacitated from attending to his usual duties and will be caused to suffer loss of earnings in the future.

53. As a result of the carelessness and negligence of these defendants, plaintiff JUDITH DALEY was caused to be deprived of the services of her son, infant plaintiff X█████ M█████, and may, in the future, be so caused.

54. The aforesaid occurrence and injuries resulting therefrom were caused solely by the carelessness and negligence of the defendants.

WHEREFORE, plaintiffs demand judgment against the defendants, in the sum of FIVE

MILLION and 00/100 ($5,000,000.00) DOLLARS on the First, Second, and Third Counts.

Dated: New York, NY
   June 1, 2018

        SANOCKI NEWMAN & TURRET, LLP

       By:

        Joshua Fogel (9036)
        Attorneys for Plaintiffs
        225 Broadway, 8th Floor
        New York, NY 10007
        (212) 962-1190

11